**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

ELIZABETH COBLE,
MILAGROS HARPER, and
DENNIS HARPER, on behalf of themselves and
others similarly situated,

                Plaintiffs,

v.

COHEN & SLAMOWITZ, LLP, DAVID COHEN, ESQ.,
MITCHELL SLAMOWITZ, ESQ., LEANDRE JOHN, ESQ.,
and CRYSTAL S.A. SCOTT, ESQ.,

                Defendants.

Civil Action No. 11-cv-1037

HON. VINCENT L. BRICCETTI

HON. GEORGE A. YANTHIS

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Dated: August 8, 2011
      White Plains, New York

Schlanger & Schlanger, LLP
Daniel A. Schlanger, Esq.
Peter T. Lane, Esq.
1025 Westchester Ave., Suite 108
White Plains, NY 10604
Ph: 914-946-1981
Fx: 914-946-2930
daniel@schlangerlegal.com
peter@schlangerlegal.com

Rody, Klein & Ryan
Gary Klein, Esq.
Melissa Garlick, Esq.
727 Atlantic Avenue
Boston, MA 02111
Ph: 617-357-5500
Fx: 617-357-5030
klein@roddykleinryan.com
garlick@roddykleinryan.com

*Attorneys for Plaintiff*

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ................................................................................1

II.     STATEMENT OF FACTS ....................................................................................3

III.    ARGUMENT.....................................................................................................7

        A.    The FDCPA Claims Are Brought Within The One Year Statute of Limitations...................7

        B.    Plainitffs Are Entitled To Equitable Tolling .....................................................9

              1. Affirmative Concealing Acts.................................................................11

              2. Self-Concealing Acts..........................................................................13

              3. Omissions In The Context Of A Duty To The Plaintiffs .................................15

              4. No Lack Of Diligence ........................................................................18

        C     Equitable Tolling Allegations Meet FRCP Rule 9(b) Pleading Standards .......................21

IV.     CONCLUSION .................................................................................................22

## TABLE OF AUTHORITIES

**Cases**

Bailey v. Glover, 88 U.S. (21 Wall.) 342, 349, 22 L. Ed. 636 (1875).....................................10, 18

Barrett v. United States, 689 F.2d 324, 327 (2d Cir. N.Y. 1982) cert. denied, 462 U.S. 1131, 77
    L. Ed. 2d 1366, 103 S. Ct. 3111 (1983) .........................................................................10

Bodner v. Banque Paribas, 114 F. Supp. 2d 117, 135 (E.D.N.Y. 2000)........................................19

Campos v. Brooksbank, 120 F. Supp. 2d 1271, 1274 (D.N.M. 2000)..............................................9

Caprino et al v. Cohen & Slamowitz et al (CV 05-4814) ........................................................3, 12

Caputo v. Pfizer, Inc., 267 F.3d 181, 189 (2d Cir. 2001) .....................................................13, 14

Davis v. Sun Refining & Marketing Co., 109 Ohio App. 3d 42, 55 (1996) ...........................11, 16

DeAngelis v. Countrywide Home Loans, Inc. (In re Hill), 437 B.R. 503, 542 (Bankr. W.D. Pa
    2010).......................................................................................................................17

Dyer-Andrews v. Academy Collection Services, Inc., 2005 WL 1871120 at *2 (D. Colo. 2005). 9

Dymm v. Cahill, 730 F. Supp. 1245, 1256 (S.D.N.Y. 1990).................................................11, 15, 19

Energy Factors, Inc. v. Nuevo Energy Co., 1991 U.S. Dist. LEXIS 16983 at *12 (S.D.N.Y Nov.
    22, 1991)..............................................................................................................21, 22

Foster v. D.B.S. Collection Agency, 463 F. Supp. 2d 783, 799 (S.D. Ohio 2006) .................8, 11

Grumman Allied Ind., Inc. v. Rohr Ind., Inc., 748 F.2d 729, 738-739 (2d Cir. 1984) .................16

Hamilton v. Smith, 773 F.2d 461, 468 (2d Cir. 1985)...........................................................11, 15

Holmberg v. Armbect, 327 U.S. 392, 397 (1946)..................................................................9, 10, 18

Judy v. Blatt, Hasenmiller, Leibsker, and Moore, LLC, 2010 U.S. Dist. LEXIS 8027 at *15 (N.D.
    Ill. Jan. 29, 2010)......................................................................................................9

Lipman v. Dickinson, 174 F.3d 1363, 1365-1366 (Fed. Cir. 1999) ...........................................17

Long v. Abbott Mortgage, 459 F. Supp. 108, 113 (D.Conn. 1978)............................................18

Magnum v. Action Collection Serv., Inc., 575 F.3d 935, 939-940 (9th Cir. 2009).....................11

Masters v. Wilhelmina Model Agency, Inc., No. 02 Civ. 4911(HB), 2003 WL 145556 (S.D.N.Y.,
    Jan. 17, 2003) ..........................................................................................................21

McAnaney v. Astoria Financial Corp., 2008 WL 222524 (E.D.N.Y. Jan. 25, 2008).............14, 15

Moll v. U.S. Life Title Ins. Co., 700 F. Supp. 1284, 1289 (S.D.N.Y. 1988).........................10, 11

New York v. Hendrickson Bros, Inc., 840 F.2d 1065, 1083 (2d Cir. 1988).....................10, 11, 13

O'Connor v. Boeing North American, Inc. 311 F.3d 1139 (9th Cir. 2002) .................................21

Olshansky v. Sutton, 2001 U.S. Dist. Lexis 945, *11-12 (S.D.N.Y. Feb. 6, 2001).....................17

Puglisi v. Debt Recovery Solutions, LLC, 2010 U.S. Dist. LEXIS 6120 (E.D.N.Y. Jan. 26,
    2010).......................................................................................................................7, 9

Schuh v. Druckman & Sinel, I.L.P, 602 F. Supp. 2d 454, 466 (S.D.N.Y. 2009) ............................8

SEC v. Alexander, 160 F. Supp. 2d 642, 649 (S.D.N.Y. 2001)..................................................21

SEC v. Aragon Capital Advisors, LLC, 2011 U.S. Dist. LEXIS 82531(S.D.N.Y. July 26, 2011)
    ............................................................................................................................21

Somin v. Total Cmty. Mgmt. Corp., 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007).......................14

Stratmeyer v. Stratmeyer, 567 N.W.2d 220 (S.D. 1997) ............................................................. 16

Sykes v. Mel Harris And Assoc., LLC, 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010) (Hon. D. Chin).................................................................................................................... 3, 11, 13, 19

Thompson v. Metro. Life Ins. Co., 149 F. Supp. 2d 38, 50 (S.D.N.Y. 2001) ........................ 19, 20

TRW. Inc. v. Andrews, 534 U.S. 19, 27 (2001) ............................................................................ 9

**Statutes**

15 U.S.C. § 1692, et seq...........................................................................................................Passim

CPLR § 308(4).............................................................................................................................. 7

Fed. R. Civ. P. 9(b) .................................................................................................................. 21, 22

New York Judiciary Law § 487 .................................................................................................. 16

New York Rules of Professional Conduct, Rule 3.3 .................................................................. 17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ELIZABETH COBLE,
MILAGROS HARPER, and
DENNIS HARPER, on behalf of themselves and
others similarly situated,

                    Plaintiffs,

v.

COHEN & SLAMOWITZ, LLP, DAVID COHEN, ESQ.,
MITCHELL SLAMOWITZ, ESQ., LEANDRE JOHN, ESQ.,
and CRYSTAL S.A. SCOTT, ESQ.,

                    Defendants.

Civil Action No. 11-cv-1037(VB)

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

HON. VINCENT L. BRICCETTI

HON. GEORGE A. YANTHIS

---

Plaintiffs Elizabeth Coble, Milagros Harper, and Dennis Harper (collectively "Plaintiffs") by and through their attorneys, Schlanger & Schlanger, LLP, respectfully submit this Memorandum of Law on behalf of themselves and others similarly situated in Opposition to Defendants' Motion to Dismiss.    For the reasons stated herein, the Court should deny Defendants' motion in its entirety.

<u>**Preliminary Statement**</u>

In November, 2006, a process server at Midlantic Process confessed in a sworn affidavit that Midlantic had falsified thousands upon thousands of affidavits of service filed in state court collection actions in which it had been hired by Cohen & Slamowitz, a large consumer collection law firm (hereinafter "C&S"). Specifically, the process server – Kenneth Vega – described how Midlantic, in order to keep its account with Cohen & Slamowitz, had developed an illegal but streamlined procedure in which, among other things:  no prior attempts were made before effecting service by the "nail & mail" method; "neighbors" referred to in Affidavits were

1

routinely invented; the process server's signature was routinely forged; and that forged signature was falsely notarized. *See* Vega Affidavit ¶ 8, attached to the Complaint, ECF # 1 ("the Complaint").

C&S, a party in the lawsuit in which Mr. Vega executed the affidavit, took no action to alert consumers or the courts to the fraud, nor did it attempt in any way to investigate the fraud. Rather, Defendants represented both affirmatively and through omission, including within the year prior to filing of the instant action, that the Affidavits of Service in these thousands of cases involving Midlantic affidavits were proper and truthful.

Rather than confront this appalling set of facts, Defendants have conjured up and moved to dismiss a fictional complaint that is more to their liking. Specifically, Defendants have imagined a Complaint in which Plaintiffs have cited the lack of service and filing of default judgments against them as, in and of themselves, violative of the FDCPA and then breezily pointed out that these default judgments happened well over a year ago. Defendants' Memorandum of Law in Support of Their Motion to Dismiss, ECF #10 ("MOL") pp. 5-6, 13-15, 16, 18.

The actual complaint, in contrast, identifies two distinct manners in which Defendants violated the FDCPA:

    (1)      Representing to Consumers and the Courts through act and/or omission that the affidavits of service and attorney affirmations filed in the New York State collection actions were accurate, true and proper, when Defendants' no longer had or could not plausibly maintain such a belief after 2006; and

    (2)      Taking collection actions related to those judgments without informing or attempting to inform consumers that the affidavits of service and attorney affirmations filed in the New York State collection actions were false, and/or that Defendant's no longer had a reasonable, good faith belief in their accuracy, propriety and truthfulness after 2006.

Complaint ¶¶ 99 -100, alleging violation of 15 USC §§ 1692d, 1692e, 1692(2)(A), 1692e(10), and 1692f.

Plaintiffs' complaint thus alleges that C&S' actions and omissions since learning of the problems with Midlantic affidavits of service – including affirmative acts and omissions occurring within a year of filing – have violated the FDCPA.  As such, there can be no argument that the claims are time-barred.  In any event, as set forth below, Plaintiffs are entitled to equitable tolling under well established law.  See, e.g. Sykes v. Mel Harris And Assoc., LLC, 757 F. Supp. 2d 413, 422 (S.D.N.Y. 2010) (Hon. D. Chin).

### Statement of Facts

All Plaintiffs had default judgments entered against them in consumer collection actions in New York State courts between 2002 and 2005.  In each collection action, C&S filed Affidavits of Service provided to it by Midlantic Process, Inc. Complaint ¶¶ 46, 63, 72.  In or about late October 2006, however, Defendants became aware of a detailed sworn affidavit of a former Midlantic employee, Kenneth Vega, filed in another action then pending in the Eastern District of New York entitled Caprino et al v. Cohen & Slamowitz et al (CV 05-4814). Id. ¶ 30. In his affidavit, Mr. Vega stated that Midlantic's service of process procedures from 1995 until February 2006 were grossly deficient and fraudulent and that affidavits of service provided to C&S by Midlantic were substantively false, improperly notarized, and contained purported signatures of process servers that were forged. Id. ¶¶ 31- 36.

Specifically, Mr. Vega described how the owners of Midlantic, Robert and Vivian Schusteritsch, falsified affidavits of service specifically for C&S' use, inter alia, in the following ways:

- No more than one attempt at service was ever made;

- The Schusteritsch's would fabricate other dates for inclusion in affidavits purporting to attest to "nail and mail" service;

- The process server did not sign the affidavits of service; instead, the Schusteritsch's would prepare affidavits and forge the process server's signature;

- The fraudulently prepared affidavits of service would purport to attest to the mailing by the process server of additional copies of the summons and complaint, when the process server had no knowledge of whether the mailing was made.

- Vivian Schusteritsch would notarize the process server's forged signature;

Vega Affidavit at ¶ 8-9. Complaint at 32-37.

Although many of these allegations are made in the context of Mr. Vega describing his own interactions with the owners of Midlantic, in light of the training provided to him by Midlantic's owners, and the practices and procedures he describes, it is painfully clear from his Affidavit that he is describing company-wide policy implemented with regard to all affidavits submitted on behalf of Cohen & Slamowitz:

> Robert Shusteritcsch informed me that they were under pressure from the lawyers for whom they were serving the documents to return an affidavit of service quickly. Robert Shusteritsch also informed me that if service was not made in the above referenced manner, Midlantic would lose their business relationship with Cohen & Slamowitz. Robert Schusteritsch also informed me that it would not be cost-effective for anyone to go to a defendant's residence more than once to attempt to serve the documents.

Vega Affidavit at ¶ 9; Complaint, e.g. at ¶ 31("Mr. Vega['s] sworn affidavit states that his misdeeds, far from an anomalous acts of a 'rogue' employee were part of Midlantic's standard operating procedure and were all directed by Midlantic and its owners, Robert and Vivian Schustericsch. . ."). For this reason, Defendants' attempts to limit the Vega Affidavits

4

import to only those affidavits filed in his name (and bearing his forged signature) are unavailing. MOL at 9, 10, and 17.

Similarly, the Vega Affidavit cannot, as Defendants would have it, be limited to describe the 95 sample affidavits that Mr. Vega reviewed and specifically confirmed (with regard to each and every one) bore a forgery of his signature and a false notarization. MOL at 9 and 10, and 17. Rather, he states that the unlawful procedure, instituted by Midlantic's owners, was "the procedure I was required to follow for servicing process", and that "he was responsible for serving" approximately "30-90 cases per week" from 1999 to 2006. Vega Affidavit at ¶ 6, 8. The fraud is thus massive as, according to his affidavit, Mr. Vega alone served approximately 16,380 – 49,140 state court defendants according to these unlawful procedures during his years at Midlantic. Moreover, he estimates – and Defendants do not deny – that 75-80% of these cases involved C&S as counsel of record for the state court plaintiff. Vega Affidafit ¶2, 6.[1]

Defendants contention that the Caprino Court adopted Defendants "reading of the affidavit" as "limit[ed] to the 95 cases in which Mr. Vega positively indicated that he had not made proper service" because it ordered Cohen & Slamowitz, in a minute entry, "to produce the 95 affidavits identified to involve Defendant Vega" is absurd and misleading on the most basic, factual level. MOL at 16-17.

First, the Court's minute entry states that these documents are being produced "by agreement among the parties". Caprino Docket Entry, 9/16/06, attached to MOL. Second, neither the Court nor anyone else could have been expressing an opinion about the scope of the Vega Affidavit in the September 16, 2006 minute entry as the Vega Affidavit didn't yet exist. Rather, the Vega Affidavit (which included the 95 affidavits produced by agreement of the

---

[1] Mr. Vega's affidavit testimony is that he worked for Midlantic from February 1999 to March 2006, and "was responsible for serving approximately 30-90 cases per week". Id.

5

parties on 9/12/06) wasn't executed until October 30, 2006, i.e. some 50 days later. Defense counsel's misrepresentation on these points is hardly an unwitting error: Mr. Leghorn, who was counsel to Cohen & Slamowitz in Caprino, cannot claim he is unaware of the circumstance under which the affidavits were produced or the timing of same.

Although it has had knowledge of the fraudulently prepared affidavits of service since 2006, C&S has taken no steps to review the judgments it had obtained based on Midlantic's "service" and has done nothing to inform the courts or the consumers against whom the affidavits were filed that C&S no longer has a good faith basis to assert the veracity of the thousands of Midlantic affidavits on file. Id. ¶ 38. Indeed, based on the Vega affidavit, it is fair now to infer not only that the Midlantic affidavits were false, but that tens of thousands of consumers are being dunned, like the Plaintiffs based on default judgments obtained in collection cases about which those consumers were never apprised, and that Defendants have known this for years.

Moreover, when consumers attempt to challenge the judgments by submitting an Order to Show Cause to vacate for lack of service, as did Plaintiff Cobble in September 2010, C&S files affirmations sworn to by its attorneys which cite to the Midlantic affidavits as unassailable proof of service. Id. ¶ 43.

For example, on September 7, 2010, Ms. Coble, acting pro se – and still unaware that the Midlantic affidavit of service filed in her case was false in the various aspects outlined above – filed an Order to Show Cause to vacate the New York judgment, alleging that she had never been served. In response, C&S, still acting as counsel for Discover Bank, submitted an affirmation, sworn to by Defendant Crystal S. A. Scott, which stated that Ms. Coble's allegations of lack of service were "patently untrue" directing the court to the Midlantic affidavit of service as

determinative proof that Ms. Coble was properly served "in strict accordance with the directives of CPLR § 308(4)." Complaint at ¶ 57.

Plaintiffs allege, and opposing counsel does not dispute this anywhere in the MOL, that Defendants' response to Ms. Coble's OSC, far from an isolated instance "is a stock response that is regurgitated by C&S and its attorneys in many cases in which a pro se debtor challenges service, including many cases involving Midlantic Affidavits." Complaint at ¶ 43.

Moreover, Defendants have, within a year of filing, continued to routinely dun consumers on judgments premised on Midlantic affidavits, without notifying the consumer that it knows the underlying affidavit of service to be fraudulent. Indeed, since the filing of this action, Mr. Harper has received a collection letter from C&S attempting to collect on the judgment entered in 2002. The letter does not provide Mr. Harper with any notice that C&S no longer believes in the accuracy and truthfulness of the affidavit of service and supporting attorney affirmations that were filed in support of the judgment.[2]

## ARGUMENT

### A. The FDCPA Claims Are Brought Within The One Year Statute of Limitations.

A claim for violations of the FDCPA may be brought within one year from the date on which the violation occurred. 15 U.S.C. § 1692k(d); Puglisi v. Debt Recovery Solutions, LLC, 2010 U.S. Dist. LEXIS 6120 (E.D.N.Y. Jan. 26, 2010). Defendants incorrectly state that all of Plaintiffs' allegations in the Complaint are beyond this one-year statute of limitations, because the default judgments in the underlying state court cases were entered between 2002 and 2005.

---

[2] Milagros Harper has also been dunned by Defendants within the year prior to filing the Complaint, nor did the communications  provide any information about C&S' knowledge of the fraudulent Vega affidavit of service underlying the judgment, the falseness of the attorney affirmations regarding same, etc. These specific facts, however, were not elaborated in the Complaint.   To the extent the Court deems it necessary, Plaintiffs seek leave to amend the Complaint.

MOL p. 7. This argument is premised on a mischaracterization of Plaintiffs' factual allegation and a misinterpretation of their legal claims.

As described above, the focus of the Plaintiffs' Complaint is not on the entry of default, but rather on the subsequent acts and omissions of C&S in connection with the invalid Midlantic affidavits underlying thousands of judgments that C&S is responsible for collecting. It is during this later period, including within the past year, that Defendants decided – in violation of the FDCPA -- to affirmatively misrepresent that the Midlantic affidavits were true and proper, to conceal their knowledge of the falseness of the affidavits, and continue to collect on the underlying judgments without informing consumers about their knowledge of the problems with the affidavits.

This situation is similar to that described in <u>Foster v. D.B.S. Collection Agency</u>, in which the Court found that debt collectors could be held liable for FDCPA claims arising from efforts to collect on improperly obtained default judgments:

> Defendants incorrectly assume that the filing dates for their underlying state court complaints were the last actionable events, and that the statute of limitations began to run on those filing dates. *Defendant's actions after the state courts' judgments*, however, such as collecting on the allegedly invalid state court judgments or garnishing class members' wages, could also be actionable events that are relevant for statute of limitations purposes.

463 F. Supp. 2d 783, 799(S.D. Ohio 2006) (emphasis added). <u>See also</u>, <u>Schuh v. Druckman & Sinel, LLP</u>, 602 F. Supp. 2d 454, 466 (S.D.N.Y. 2009)(false statements in collection letter are actionable even though the valid foreclosure judgment upon which law firm was collecting, was entered beyond the statute of limitations).

Likewise, in <u>Campos v. Brooksbank</u>, the court found that defendants could be liable for false affidavits filed during the course of a collection lawsuit, even though claims based on the filing of that lawsuit were time-barred, stating:

> [Plaintiffs] point to actions (the execution and filing of two allegedly false affidavits and the notice of intent to depose the credit union) taken in 1998 by Defendant within a year of the filing of this case. While those acts occurred during the course of litigation initiated more than a year before the FDCPA suit, that fact does not shield Defendant from FDCPA scrutiny.

<u>Campos</u>, 120 F. Supp. 2d 1271, 1274 (D.N.M. 2000).

In addition, later violations which occur within the one year statute of limitations "may be considered separate, discrete violations… and accordingly, the statute of limitations has not run on those claims," even when initial violations or communications occurred beyond the statute of limitations. <u>Puglisi</u>, 2010 U.S. Dist. LEXIS 6120 at *9; <u>Dyer-Andrews v. Academy Collection Services, Inc.</u>, 2005 WL 1871120 at *2 (D. Colo. 2005); <u>Judy v. Blatt, Hasenmiller, Leibsker, and Moore, LLC</u>, 2010 U.S. Dist. LEXIS 8027 at *15 (N.D. Ill. Jan. 29, 2010) (conduct by a state court plaintiff that necessitated consumer's state court attorney to appear at five separate conferences distinguishable from wrongful filing of suit and therefore not time-barred as a matter of law).

### B. Plaintiffs Are Entitled To Equitable Tolling

Even were the recent affirmative acts set forth above to be somehow disregarded, Plaintiffs are entitled to equitable tolling. The Supreme Court has consistently held that the doctrine of fraudulent concealment tolls the statute of limitations whenever a plaintiff "has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part." <u>Holmberg v. Armbect</u>, 327 U.S. 392, 397 (1946); <u>TRW, Inc. v. Andrews</u>, 534 U.S. 19, 27 (2001).

9

In the Second Circuit, the doctrine of fraudulent concealment tolls a statute of limitations where a plaintiff shows:

(1)  that the defendant concealed from [the plaintiff] the existence of his cause of action;

(2)  that [plaintiff] remained ignorant of that cause of action until some point within [the applicable statute of limitations for] the commencement of his action; and

(3)  that his continuing ignorance was not attributable to a lack of diligence on his part.

New York v. Hendrickson Bros. Inc., 840 F.2d 1065, 1083 (2d Cir. 1988); Barrett v. United States, 689 F.2d 324, 327 (2d Cir. N.Y. 1982) cert. denied, 462 U.S. 1131, 77 L. Ed. 2d 1366, 103 S. Ct. 3111 (1983) ("read into every federal statute of limitations . . . is the equitable doctrine that in case of defendant's fraud or deliberate concealment of material facts relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit.") (citations omitted).

"The purpose of the federal equitable tolling doctrine is to prevent a defendant from 'concealing a fraud, or . . . committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it . . .'" Moll v. U.S. Life Title Ins. Co., 700 F. Supp. 1284, 1289 (S.D.N.Y. 1988) quoting Bailey v. Glover, 88 U.S. (21 Wall.) 342, 349, 22 L. Ed. 636 (1875). Moreover, although the equitable tolling doctrine has at times been referred to as "extraordinary", the Second Circuit has also made clear that "any plaintiff who is blamelessly ignorant of the existence or cause of his injury should be accorded the benefits of the more liberal [equitable tolling] standard." Barrett, 689 F.2d at 327.

"The equitable doctrine [of fraudulent concealment] is read into every federal statute of limitation" (Holmberg, 327 U.S. at 397); and courts have regularly applied equitable tolling to

FDCPA claims.  See e.g., Sykes v. Mel Harris and Assoc., LLC, 757 F. Supp. 2d 413, 422

(S.D.N.Y 2010) (applying equitable tolling to FDCPA claims for violations that occurred over

one year before the filing of complaint due to fraudulent concealment); Magnum v. Action

Collection Serv., Inc., 575 F.3d 935, 939-940 (9th Cir. 2009) (tolling FDCPA statute of

limitations under a discovery rule); Foster, 463 F.Supp. 2d at 799 (tolling FDCPA statute of

limitations under a fraudulent concealment theory).

The concealment element is met in one of two ways, either by affirmative acts of

defendant to prevent the discovery of a plaintiff's claim or by a showing that the wrong itself

was of such a nature as to be self-concealing.  Hendrickson Bros, Inc., 840 F.2d at 1083.  In

addition, where there is an independent duty to disclose the wrong, an omission, even if not self-

concealing, is sufficient. Dymm v. Cahill, 730 F. Supp. 1245, 1256 (S.D.N.Y. 1990); Hamilton

v. Smith, 773 F.2d 461, 468 (2d Cir. 1985); Davis v. Sun Refining & Marketing Co., 109 Ohio

App. 3d 42, 55 (1996).

## 1. Affirmative Concealing Acts

Pleadings may properly allege fraudulent concealment by showing that a defendant took

affirmative steps to prevent a plaintiff from discovering her claim or injury.  Moll v. U.S. Life

Title Ins. Co., 700 F. Supp. 1284, 1289-1290 (S.D.N.Y. 1988).

Here, Plaintiffs have alleged affirmative concealment with particularity.  Specifically, as

alleged in the Complaint, whenever the judgments were challenged by consumers, C&S would

actively conceal their knowledge of the false affidavits by submitting attorney affirmations that

point to the Midlantic affidavits as unassailable evidence of proper service under the CPLR.

Complaint ¶¶ 43, 57.  Moreover, as stated above, Mr. and Mrs. Harper (along with thousands of

other consumers) have received dunning letters and other communications from C&S in the past year, attempting to collect on the default judgments. These communications deliberately conceal the fact that C&S can no longer maintain a good faith belief in the accuracy and veracity of the Midlantic affidavits underlying those judgments. Thus, C&S has taken affirmative steps to conceal their knowledge of the fraudulent Midlantic affidavits, and in doing so, has prevented Plaintiffs from discovering their claims under the FDCPA.

Defendants, however, attempt to argue that C&S has done nothing to conceal the default judgments or the "Vega Affidavit." MOL p. 15-18. With regard to the default judgments, Defendants simply (perhaps willfully) misconstrue the Complaint. Even assuming a consumer had knowledge of the default judgment, he or she would have no way of knowing that the process server's signature on the affidavit of service was forged, that the notarization was fraudulent, etc. Nor, for example, would the consumer have any way of knowing that Defendants knew this at the time they pointed to the Midlantic Affidavit as rock-solid proof of service in proceedings before the state court.

In this same way, Defendants concealed their knowledge of the Vega Affidavit and what it revealed about Midlantic's standard operating procedure. Even when challenged point blank by a consumer who was not served, Defendants hid their knowledge that the supposed "proof of service" was a sham document. Moreover, the Vega Affidavit has not been available on PACER until the filing of this lawsuit. Nor is there any reference in the PACER docket for the Caprino case that would provide even the most savvy and resourceful consumer with any knowledge of the affidavit's contents.

Defendants argue that the 9/12/06 minute entry in the Caprino case regarding production of 95 affidavits of service "identified to involve" Vega constitutes public disclosure of the Vega

12

Affidavit and defeats any allegation of concealment. This argument is frivolous: Not only does the minute entry not address any aspect of Midlantic's fraudulent service practices, but the Vega Affidavit, dated 10/30/06, did not exist on the 9/12/06, the date of the minute entry.

### 2. Self-Concealing Acts

Even if Defendants' affirmative concealment were somehow to be ignored, the violations alleged are self-concealing in nature and, as such, equitable tolling would apply. A self concealing act is an "act committed in the course of the [wrong] that has the effect of concealing the [wrong] from the plaintiff." Caputo v. Pfizer, Inc., 267 F.3d 181, 189 (2d Cir. 2001). Moreover, "[t]he passing off of a sham article as one that is genuine is an inherently self-concealing fraud." Hendrickson Bros, Inc., 840 F.2d at 1083.

In fact, other courts in this District have already ruled that the behavior here at issue may constitute grounds for equitable tolling. The circumstances pled in the Complaint are similar to those of the plaintiffs in Sykes v. Mel Harris, 757 F. Supp. 2d 413 (S.D.N.Y. 2010). The Sykes plaintiffs were the victims of "sewer service" and like Plaintiffs here, had no reason to suspect that the defendants had engaged in any fraudulent concealment related to those suits. Although the debt collection lawsuits against them had been filed many years before they filed their class action lawsuit, the Sykes plaintiffs did not discover their cause of action until one year before the filing of their complaint. Without discussing or requiring any specific "diligence" on the part of the plaintiffs, Judge Chin determined in Sykes, that "[b]ecause sewer service purposefully ensures that a party is never served, it is plausible that defendants' acts were of such character to conceal themselves to warrant equitable tolling." Sykes, 757 F. Supp. 2d at 422.

13

Here, Defendants became aware that the Midlantic Affidavits were shams, being, <u>inter alia</u>, neither truly signed, nor truly notarized. Instead of revealing its knowledge, Defendants continued to "pass-off" the documents as "genuine" rather than the "fakes" they knew them to be. Defendants did this because, to reveal the problems with the Midlantic affidavits to its victims would have revealed their own violations of the FDCPA and would have lost C&S profits. <u>See Id.</u> at 1084 ("If a bid-rigging conspiracy exists, it must remain concealed to be successful. Any knowledge of the conspiracy would lead plaintiff to seek action immediately and result in the collapse of the conspiracy"). Thus, because Defendants' knowledge of the false affidavits had to remain concealed in order for C&S to be successful in its collection efforts, they were committing acts in the course of violating the FDCPA that continually concealed previous violations of the statute. <u>See Caputo,</u> 267 F.3d at189.

Only Defendants could know the full impact of Midlantic's actions once they were discovered in 2006; and only Defendants had the ability to make the courts and consumers aware that C&S no longer had a good faith basis to believe the truth and accuracy of affidavits and affirmations previously filed. Thus, by keeping that knowledge to themselves and failing to provide that information to consumers even when C&S was making direct contact to collect on the judgment or oppose motions to vacate the judgment, Defendants engaged in an inherently "self-concealing" fraud.

<u>Somin v. Total Cmty. Mgmt. Corp.</u>, 494 F. Supp. 2d 153, 160 (E.D.N.Y. 2007), and <u>McAnaney v. Astoria Financial Corp.</u>, 2008 WL 222524 (E.D.N.Y. Jan. 25, 2008) relied upon by Defendants, are inapposite. In <u>Somin</u>, the Court refused to equitably toll the statute of limitations where Plaintiff had not alleged equitable tolling or fraudulent concealment in its Complaint and raised the issue for the first time in opposition to a motion to dismiss. 494 F.Supp.

14

2d at 160. In addition, the Court noted the fact that "all facts alleged in the complaint and those evident from Plaintiff's own documents indicate her awareness of [the FDCPA violations] well over one year prior to commencement of this action. Id. In contrast, both the doctrine and supporting facts were well-plead in the instant case, and no Plaintiff was or could have been aware of Defendants failure to take appropriate affirmative steps in lights or its knowledge of the Midlantic Affidavits. Complaint ¶¶ 92-93.

In McAnaney, the Court refused to find that "the mere nondisclosure of fees later charged to plaintiffs does not, by itself, justify equitable tolling of the TILA limitations period. . . . because if the very nondisclosure or misrepresentation that gave rise to the TILA violation also tolled the statute of limitations, the effect of the statute of limitations would be nullified." 2008 WL 222524 at *7. Those facts and rationale have no application to the case at bar. Defendants here became aware of a fraud on the court and nonetheless have continued to dun consumers on the judgments, without informing either consumers or the Court that the underlying affidavits of service were known to be a sham. Moreover, Defendants swore under penalty of perjury that the sham affidavits were valid proof of service whenever service was challenged. Complaint ¶¶ 41-43. Plainly this exceeds "mere non-disclosure" on a loan document of a fee later charged to a consumer.

### 3. Omissions In The Context Of A Duty To The Plaintiffs

Failure to disclose information in the face of duty to do so, is enough to establish fraudulent concealment, even without identifying an affirmative act to conceal. Dymm v. Cahill, 730 F. Supp. 1245, 1256 (S.D.N.Y. 1990); see also Hamilton v. Smith, 773 F.2d 461, 468 (2d Cir. 1985) (recognizing that silence in the face of fiduciary duty obviates the need to show

affirmative act); <u>Davis v. Sun Refining & Marketing Co.</u>, 109 Ohio App. 3d 42, 55 (1996) ( "It has generally been held that nondisclosure of a fact will become the equivalent of fraudulent concealment when it is the duty of the person to speak in order to place the other party on equal footing with him"); <u>Stratmeyer v. Stratmeyer</u>, 567 N.W.2d 220 (S.D. 1997) (silence by party with duty to disclose constitutes fraudulent concealment without need to show any affirmative attempt to hide facts from plaintiff).  See Complaint ¶ 39 (alleging that Defendants had an affirmative obligation to disclose the false affidavits but failed to do so).

Furthermore, under New York law, a duty to disclose can arise even absent a fiduciary relationship. <u>Dymm</u>, 730 F. Supp. at 1256, fn. 3("[E]ven if Devins was not in a fiduciary relationship with plaintiff, plaintiff has alleged enough facts to support an inference that Devins had a duty of disclosure under New York law.")  For example, a duty arises where "where one party possesses superior knowledge, not readily available to the other, and knows that the other is acting on the basis of mistaken knowledge." <u>Grumman Allied Ind. Inc. v. Rohr Ind., Inc.</u>, 748 F.2d 729, 738-39 (2d Cir. 1984).

Accordingly, in its dealings with consumers, C&S had a duty to reveal information about the Midlantic affidavits due to its "superior knowledge" of the facts and its obvious knowledge that consumers were failing to assert their rights on the basis of the consumer's "mistaken knowledge" – or complete lack of knowledge – about the inauthenticity of the service affidavits.

Defendants also had a duty to disclose arising under at least two separate statutes: First, under New York Judiciary Law § 487 it is both actionable and a crime to deceive the court or a party to an action. The statute states:

> An attorney or counselor who. . . is guilty of any deceit or collusion, or consents
> to any deceit or collusion, with intent to deceive the court or any party. . . is guilty

16

> of a misdemeanor, and in addition to the punishment prescribed therefor by the
> penal law, he forfeits to the party injured treble damages.

This statutory duty has been held to apply equally to both deceptive acts and to deceptive

omissions. Olshansky v. Sutton, 2001 U.S. Dist. Lexis 945, *11-12 (S.D.N.Y. Feb. 6, 2001)

(attorney's omission of material information when petitioning the court is deceptive under NY

Judiciary Law § 487).

Accordingly, once C&S knew that it could no longer assert a good faith belief in the

accuracy and veracity of Midlantic affidavits it had a duty to inform both the court and the

consumers. Instead, Defendants forged ahead with collections, deceiving both consumers and

courts by remaining silent about the problems with the service affidavits in violation of § 487.

Second, under New York Rules of Professional Conduct, Rule 3.3, New York attorneys

have an ongoing duty to correct false statements of material fact or law previously made to a

tribunal. See 22 NYCRR Part 1200, Rule 3.3(a)(1) ("A lawyer shall not knowingly make a false

statement of fact or law to a tribunal or fail to correct a false statement of material fact or law

previously made to the tribunal by the lawyer.") Because C&S had filed attorney affirmations

swearing to the accuracy of Midlantic affidavits as proof of service before 2006, C&S thus had a

duty to inform the court and the consumers that the previous statements of its attorneys regarding

the service affidavits were no longer accurate. See DeAngelis v. Countrywide Home Loans, Inc.

(In re Hill), 437 B.R. 503, 542 (Bankr. W.D. Pa 2010) (attorney had an obligation under

Pennsylvania's identical rule to correct misstatements made to the court after becoming aware of

their inaccuracy); Lipman v. Dickinson, 174 F.3d 1363, 1365-1366 (Fed. Cir. 1999) (attorney

had a duty to notify the PTO that affidavits in support of his client had been recanted by

affiants).

Thus, even were Defendants to somehow escape both the consequences of their affirmative acts of concealment and the self-concealing nature of the fraud (passing off the sham affidavits as genuine), equitable tolling would apply. [3]

### 4. No Lack of Diligence

It is well established that equitable tolling is available to a plaintiff who has been the victim of fraudulent concealment "when there has been no negligence or laches on the part of a plaintiff in coming into the knowledge of the fraud." Bailey, 88 U.S. at 349-50. Holmberg v. Armbrecht, 327 U.S. 392, 397 (1946).

Unsurprisingly, where the plaintiff has not been apprised of sufficient facts to be on notice of the claim, no inquiry is made into plaintiff's diligence. As the Court stated in Long v. Abbott Mortgage, 459 F. Supp. 108 (D.Conn. 1978):

> The essence of equitable tolling is that a statute of limitations does not run against a plaintiff who is unaware of his cause of action. The statute only begins to run "when the plaintiff either acquires actual knowledge of the facts that comprise his cause of action or should have acquired such knowledge through the exercise of reasonable diligence *after being apprised of sufficient facts to put him on notice.*" In deciding whether plaintiff "knew or should have known" of the defendants' conduct, it must be determined first whether plaintiff was aware of any facts sufficient to put him on notice, thereby creating an obligation of diligence, and if so, whether plaintiff fulfilled that duty of diligence.

Id. at 113 (citations omitted). Thompson v. Metro. Life Ins. Co., 149 F. Supp. 2d 38, 50 (S.D.N.Y. 2001) ("the question is whether, if the plaintiffs had exercised a reasonable level of diligence, any evidence of their injury would have reached them."); Sykes, 757 F. Supp. 2d at

---

[3] Likewise, C&S' attempts to argue that Plaintiffs have failed to allege fraudulent conduct beyond the alleged FDCPA violations, is flatly wrong. MOL p. 18. Plaintiffs have alleged that C&S failed to comply with a duty, separate and apart from any obligation under the FDCPA, to reveal to the court and to the opposing parties that C&S could no longer believe in the truth and accuracy of the service affidavits. Complaint ¶ 39.

422 (no specific diligence was required of Plaintiffs who were kept from knowledge of default judgments by the inherently self-concealing nature of Defendant's violations); Bodner v. Banque Paribas, 114 F. Supp. 2d 117, 135 (E.D.N.Y. 2000)("One example of an 'extraordinary circumstance' meriting equitable tolling may be where plaintiffs can show that it would have been impossible for a reasonably prudent person to learn or discover critical facts underlying their claim.");

Likewise, in Dymm v. Cahill, where the plaintiff alleged that the defendant prevented him from discovering his cause of action through a combination of active concealment of forged documents and omissions in the face of a duty, the court held:

> Although plaintiff does not specifically allege actions which could be regarded as "due diligence" in ferreting out the truth, there also is no particular moment, discernable from the complaint, when it should have become so obvious to plaintiff that a fraud was taking place that he had a duty to uncover or deduce it...

730 F. Supp. at 1256-1257. Similarly, because Plaintiffs in the instant case had no way of knowing that the Midlantic Affidavits were forged, falsely notarized, etc. and that Defendants were omitting to inform them of their knowledge of same, there was no "due diligence" Plaintiffs could have reasonably engaged in to discover their cause of action until meeting with counsel in 2010.[4]

Defendants suggest, however, that Plaintiffs failure to take actions to discover the default judgments against them before 2009 and 2010 constitutes a lack of diligence on the part of plaintiffs to discover their cause of action. MOL pp. 13-15. This argument suffers from the same

---

[4] Significantly, the Plaintiff in Dymm only learned of his cause of action when he met with counsel, who provided him with information about the forged documents "shortly before filing the complaint." Id.

flaws as Defendants other arguments – representing a fundamental mischaracterization of the Complaint. The filing of default judgments is not what Plaintiffs have identified as violations of the FDCPA. Instead, as stated throughout, Plaintiffs' cause of action arises from Defendants' failures to inform the courts and consumers that they now knew the Midlantic Affidavits previously filed contained forged signatures, false notarizations, etc. No amount of diligence by a reasonably prudent consumer, even with judgment and supporting affidavit of service in hand, would reveal the FDCPA violations alleged herein.

In this regard, it is important to note that neither the Vega Affidavit nor any other public disclosure of Midlantic's fraudulent practices much less Defendants knowledge of same were available on PACER, eCourts, etc. *Supra* at p. 11. Moreover, even if Defendants could point to a previous case or public record in which the misconduct alleged here was set forth, this would be insufficient to warrant dismissal, as this would not establish as a matter of law that a reasonably diligent consumer would have known of the misconduct.

For example, in Thompson, the Court refused to dismiss claims regarding race discrimination in the sale of burial insurance from the 1940's through the 1970's, despite numerous public disclosures, holding that equitable tolling could apply:

> While these twenty-four articles, published over a sixty year period, could be construed as reflecting a general public awareness of the inequities of industrial life insurance, the defendant's evidence is a far cry from what is necessary to determine, as a matter of law, that these plaintiffs should have known of their injuries
>
> . . . MetLife also points to two lawsuits, one in 1935 [**38] and the other in 1976, as evidence that a "reasonably diligent plaintiff long ago could have learned about and pursued exactly the types of claims these plaintiffs now seek to pursue." *Although the fact that two individuals, out of the millions that were sold policies, brought a claim against MetLife on this ground is again evidence that*

*some people knew of the unequal nature of the policies, but this cannot be my
yardstick for a determination that the plaintiffs here, or other reasonable persons,
knew or should have known of their injuries.*

Thompson, 149 F. Supp. 2d at 52 (*emphasis added*).  See also <u>Masters v. Wilhelmina Model
Agency, Inc.,</u> No. 02 Civ. 4911(HB), 2003 WL 145556 (S.D.N.Y., Jan. 17, 2003) (plaintiffs not
required to "comb through newspapers" looking for description of evidence in prior lawsuits that
might alert them to their claims).  See generally <u>O'Connor v. Boeing North American, Inc.</u> 311
F.3d 1139 (9th Cir. 2002) (discussion of limits on inquiry notice as a basis to overcome the
discovery rule under federal law).

**B.**     **Equitable Tolling Allegations Meet FRDCP Rule 9(b) Pleading Standards**

Although claims of fraudulent concealment, are subject to Fed. R. Civ. P. 9(b)
requirements that averments of fraud allege the circumstances constituting fraud or mistake with
particularity, it is also well settled that "the rule is relaxed as to matters particularly within the
adverse parties' knowledge." <u>Energy Factors, Inc. v. Nuevo Energy Co.,</u> 1991 U.S. Dist. LEXIS
16983 at *12 (S.D.N.Y Nov. 22, 1991); <u>SEC v. Alexander,</u> 160 F. Supp. 2d 642, 649 (S.D.N.Y.
2001); <u>SEC v. Aragon Capital Advisors, LLC,</u> 2011 U.S. Dist. LEXIS 82531(S.D.N.Y. July 26,
2011)

In any event, Plaintiffs have submitted a complaint with detailed allegations regarding the
time and manner by which C&S became aware of the problems with the affidavits of service
prepared by Midlantic and the acts and omissions of C&S to conceal their violations of law.  For
example, Plaintiffs have identified the date and source of Defendants' knowledge (i.e. the Vega
Affidavit, executed on October 30, 2006 in a case in which Defendant C&S was a party).
Complaint ¶ 30, 38.  Plaintiffs have also alleged specific details about how, despite having that

knowledge, C&S has concealed it by explicitly citing the Midlantic affidavits as proof of service when consumers challenge service. Complaint ¶¶ 41-43.

In addition, Plaintiffs have identified how Defendant David Cohen was confronted individually with the Vega Affidavit in a subsequent litigation, and testified to his firm's failure to conduct any review whatsoever of the Midlantic affidavits and his firm's failure to notify the courts or consumers that it no longer had a good faith basis to assert the veracity of the affidavits. Complaint ¶ 38.

These claims are stated with particularity and are not based merely upon "information and belief." Rather they are supported by documentary evidence attached to the Complaint and detailed factual allegations about specific members of C&S who have acted, or failed to act, in various ways to conceal the firm's wrongdoing. The specificity of these allegations provides Defendants with more than "fair notice of the basis of the claims in order to prepare a defense". Energy Factors, 1991 U.S. Dist. LEXIS 16983 at *13 (requiring fraud claims be only specific enough to provide fair notice of the basis of the claims).

Accordingly, Plaintiffs claims for equitable tolling of the statute of limitations due to concealment are sufficient under the pleading standards of Rule 9(b).

*[rest of page left intentionally blank]*

22

## CONCLUSION

For the above stated reasons, Defendants' motion should be denied in its entirety.

Respectfully,

Daniel A. Schlanger, Esq.
Peter T. Lane, Esq.
Schlanger & Schlanger, LLP
1025 Westchester Avenue, Suite 108
White Plains, New York 10604
Ph: (914) 946-1981
Fx: (914) 946-2930
daniel@schlangerlegal.com
peter@schlangelegal.com

s/Gary Klein
Gary Klein, Esq.
Melissa Garlick, Esq.
RODDY KLEIN & RYAN
727 Atlantic Avenue, 2nd Floor
Boston, Massachusetts 02111
Ph:  617-357-5500
Fx:  617-357-5030
klein@roddykleinryan.com
garlick@roddykleinryan.com

*Attorneys for Plaintiffs*

23

CERTIFICATE OF SERVICE

I, Daniel A. Schlanger, Esq., one of Plaintiffs' attorneys, hereby certify that on August 8, 2011, the foregoing Memorandum of Law in Opposition to Defendants' Motion to Dismiss was filed with the Clerk of the Court via ECF and, in addition, sent to the address below via regular mail:

Thomas A. Leghorn, Esq.
Wilson Elser Moskowitz Edleman & Dicker, LLP
*Attorneys for Defendants*
150 East 42nd Street
New York, NY 10017

DATED:      August 8, 2011
            New York, New York

Daniel A. Schlanger, Esq.
Schlanger & Schlanger, LLP
1025 Westchester Avenue, Suite 108
White Plains, NY 10604
Ph: 914-946-1981
Fx: 914-946-2930
daniel@schlangerlegal.com