**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Elizabeth Coble, | |
| Milagros Harper, | **AMENDED COMPLAINT FILED AS OF RIGHT PURSUANT TO SCHEDULING ORDER** |
| And | |
| Dennis Harper, | |
| on behalf of themselves and all others similarly situated. | **JURY TRIAL DEMANDED** |
| Plaintiffs | |
| v. | **HON. VINCENT L. BRICCETTI** |
| Cohen & Slamowitz, LLP | **INDEX: 11-CV-01037** |
| David Cohen, Esq. | |
| Mitchell Slamowitz, Esq. | |
| Leandre John, Esq. | |
| Crystal S.A. Scott, Esq. | |
| Defendants | |

Plaintiffs Elizabeth Coble, Milagros Harper and Dennis Harper, on behalf of themselves and all others similarly situated, for their complaint, allege, upon personal knowledge as to themselves and information and belief as to other matters, as follows:

**INTRODUCTION**

1. This class action seeks to vindicate the rights of tens of thousands of New York consumers who have been or are being sued in consumer collection actions in which Defendant Cohen & Slamowitz, LLP ("C&S"), representing various creditors and debt buyers, caused to be filed Affidavits of Service provided to it by Midlantic Process, Inc.

2. In late October or November, 2006, Defendants became aware of a detailed, sworn affidavit testimony of a former Midlantic employee, Kenneth Vega in a federal lawsuit then pending in the Eastern District of New York, titled <u>Caprino et al v. Cohen & Slamowitz et al</u> (CV 021-4814) in which Mr. Vega, against his penal interest, stated that Midlantic's procedures regarding service of process from 1995 until February 2006 were grossly deficient and fraudulent, that the affidavits of service provided to

    C&S by Midlantic were substantively false, that the notarizations on the affidavits were improper, and that the purported signatures of the process servers were forged.

3. Rather than informing the consumers who were defendants in the tens of thousands of cases involving Affidavits of Service provided by Midlantic Process, Inc. or the state courts in which it had filed its collection actions that it no longer had a good faith basis to believe in the accuracy, truthfulness and propriety of the Affidavits of Service it had filed, or the Attorney Affirmations referring to same, Cohen & Slamowitz concealed the information in order to facilitate collections against consumers, in violation of the Fair Debt Collection Practices Act, 15 U.S.C. 1692 et seq.

## JURISDICTION AND VENUE

4. This Court has jurisdiction over Plaintiffs' federal claims pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1692k(d) and 18 U.S.C. §§ 1961-68, and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C.. § 1367.
5. Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.
6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 and 18 U.S.C. § 1965.

## PARTIES

*Named Plaintiffs*

7. Plaintiff Elizabeth Coble currently resides in Palmetto, Florida.
8. Ms. Coble previously resided in Manhattan, New York and had a default judgment taken against her in New York Civil Court in 2005 in an action titled <u>Discover Bank v. Coble</u> (Index: 36085/05).
9. The judgment against Ms. Coble was vacated and the action discontinued on November 3, 2010.
10. C&S was counsel to Discover Bank in said action, and the affidavit of service for the Summons and Complaint that C&S filed or caused to be filed was provided by Midlantic Process, Inc.
11. Ms. Coble is a "consumer" as that term is defined in 15 U.S.C. § 1692a(3).
12. Plaintiff Milagros Harper currently resides in Yonkers, New York.
13. Mrs. Harper is the judgment debtor in a consumer collection action titled <u>Direct Merchants Credit Card Bank v. Harper</u> (Westchester Supreme)(Index: 21529/02)

14. C&S was counsel to Direct Merchants Credit Card Bank in said action, and the affidavit of service for the Summons and Complaint that C&S filed or caused to be filed, was provided by Midlantic Process, Inc.
15. Mrs. Harper is a "consumer" as that term is defined in 15 U.S.C. § 1692a(3).
16. Plaintiff Dennis Harper currently resides in Yonkers, New York.
17. Mr. Harper, who is married to Milagros Harper, is the judgment debtor in a consumer collection action titled <u>Discover Bank v. Harper</u> (Westchester Supreme)(Index: 2661/02)
18. C&S was counsel to Discover Bank in said action, and the affidavit of service for the Summons and Complaint that C&S filed or caused to be filed, was provided by Midlantic Process, Inc.
19. Mr. Harper is a "consumer" as that term is defined in 15 U.S.C. § 1692a(3).

*Defendants*

20. Defendant Cohen & Slamowitz, LLC ("C&S") is a New York limited liability company with its principal place of business in Woodside, New York.
21. Defendant, a law firm, is regularly engaged in the business of collecting consumer debts alleged to be due to another, and is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).
22. Defendant David Cohen, Esq. ("Defendant Cohen") is a natural person, and a principal of C&S. Defendant Cohen regularly collects consumer debts alleged to be due to another, and he is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).
23. Defendant Mitchell Slamowitz, Esq. ("Defendant Slamowitz") is a natural person, and a principal of C&S. Defendant Slamowitz regularly collects consumer debts alleged to be due to another, and is a "debt collector" as defined by the FDCPA, I5 U.S.C. § 1692a(6).
24. Defendant Leandre John, Esq. (Defendant John) is an employee or partner of C&S and its "Managing Attorney". Defendant John regularly collects consumer debts alleged to be due to another, and is a "debt collector" as defined by the FDCPA, 15 U.S.C. § 1692a(6).
25. Defendant Crystal S.A. Scott, Esq. (Defendant Scott) is an employee of C&S and an associate attorney in that office. Defendant Scott regularly collects consumer debts

alleged to be due to another via, and is a "debt collector" as defined by the FDCPA, U.S.C. § 1692a(6).

## COMMON FACTUAL ALLEGATIONS

26. C&S is one of New York State's highest volume debt collection law firms.
27. C&S according to its own records -- filed 59,708 debt collection cases in 2005, 83,665 cases in 2006, 87,877 cases in 2007, 80,873 cases in 2008.
28. Upon information and belief, C&S used Midlantic as its process server in tens of thousands of cases in which it obtained default judgments (hereafter, the Midlantic default judgments) between 1995 and February 2006.
29. C&S, Midlantic's owner's (Vivian and Robert Schusteritsch) and former Midlantic process server Kenneth Vega were named as Defendants in an individual FDCPA action filed in United States District Court, EDNY, titled Caprino et al. v. Cohen & Slamowitz, LLP et al. (Index:CV-021-4814) that was subsequently settled.
30. By sworn affidavit dated October 30, 2006, Mr. Vega openly confessed to routinely making substantively false statements in affidavits of service filed on behalf of C&S, estimating that between March 1995 through February, 2006, he filed between 30 and 90 false affidavits a week with New York State Courts, and that C&S was counsel for the plaintiff in 75-80% of these cases.  Vega Affidavit, attached hereto as Exhibit 1.
31. Mr. Vega's sworn affidavit states that his misdeeds, far from an anomalous acts of a "rogue" employee were part of Midlantic's standard operating procedure and were all directed by Midlantic and its owners, Robert and Vivian Schusteritsch, stating, inter alia, that "Robert and Vivian Schusteritsch provided me with all of the instructions and guidance on how to serve process."
32. As part of this Affidavit, Mr. Vega reviews some 92 affidavits of service and states that in each case, *inter alia:*  his signature was signed by another; he did not appear in front of a notary for signature on any of the dates indicated; that he made no previous "attempts" at service; he never went to any residence or business listed more than one time; he did not make any of the mailings of the Summons and Complaint indicated on these affidavits of service; and that it was not his general practice to ask about a Defendant's military status.

33. Rather, Mr. Vega describes the procedure at Midlantic as one in which he would pick up a stack of Summons and Complaints twice a week from the Schusterisch's home, and drive to the addresses provided by his employer. If he was not able to serve the defendant or a person of suitable age and discretion, he would leave the documents at the address contained in the affidavit. He did not go more than once to any state court defendant's residence.

34. He would then phone in information about how and what time the papers had been "served", or give the Schusterisch's this information the next time he went to their home to pick up additional Summons & Complaints.

35. Midlantic would then fabricate other dates on which he had supposedly made previous attempts at service, forge his signature, and falsely notarize the document.

36. Mr. Vega further states that these affidavits also falsely state that he had mailed a copy of the summons and complaint as required under the New York Civil Practice Law Rules ("CPLR") when he did not.

37. Mr. Vega states that he was told by Robert Schusteritsch that Midlantic used this method of "service" because if they did not they would "lose their business relationship with Cohen & Slamowitz". Exhibit 1 at ¶9.

38. Since that time, according to sworn deposition testimony of David Cohen in a United States District Court, SDNY, titled Shepherd v. Cohen & Slamowitz (Index: 08-cv-6199)[1], C&S, has not undertaken any review of the Midlantic affidavits and has not notified the consumers against whom the affidavits were filed or the courts in which the Midlantic affidavits were filed of the Vega Affidavit and, more generally, that it no longer has a good faith basis to assert the veracity of the thousands of Midlantic affidavits on file, on the basis of which it regularly takes collection activity.

39. C&S has failed to do so despite the fact that it has an ongoing obligation to advise the Court and its adversaries if it becomes aware that it no longer has a good faith basis for its allegations.

---

[1] In which Ms. Shepherd was represented by co-counsel for Plaintiffs in the instant action, Schlanger & Schlanger, LLP.  See Shepherd v. Law Offices of Cohen & Slamowitz, LLP, 668 F.Supp.2d 579 (SDNY 2009); and Shepherd v. Law Offices of Cohen & Slamowitz, 2010 WL 4922314 (SDNY 2010).

40. Indeed, since learning of the issue, C&S has subsequently filed affirmations sworn to by its attorneys which falsely state that C&S has a good faith belief in the accuracy and propriety of these affidavits.

41. These C&S affirmations include but are not limited to affirmations submitted in support of default judgments, sworn to by Defendant Slamowitz or Defendant Cohen, stating that the deponent "subscribes and affirms under penalties of perjury. . . that pursuant to the Affidavit(s) of Service of the process server on the file herein, the defendant(s) were served. . ."

42. C&S also submits similar false sworn statements in cases in which a consumer challenges service including that of Plaintiff Coble as described below.

43. Upon information a belief, Defendant Scott's sworn statement in opposition to Ms. Coble's pro se motion (set forth below) is a stock response that is regurgitated by C&S and its attorneys in many cases in which a pro se debtor challenges service, including many cases involving Midlantic Affidavits.

44. Defendants' affirmative misrepresentations and omissions with regard to the Midlantic affidavits and its good faith belief in their propriety constitute an unfair and deceptive collection practice.

### PLAINTIFFS' EXPERIENCES
### (ELIZABETH COBLE)

45. In July 2005, C&S, on behalf of Discover Bank, filed a lawsuit against named plaintiff Elizabeth Coble in New York Civil Court, titled <u>Discover Bank v. Coble</u> (Index: 36085/05), alleging that Ms. Coble owed $10,272.61 plus attorney's fees of $2,054.52, plus costs and interest.

46. Sometime in August, 2005, C&S or an agent acting on its behalf filed an affidavit of service in <u>Discover Bank v. Coble</u>, which was provided by Midlantic.

47. Specifically, the affidavit was purportedly sworn to and signed by "Alfred Smith, Lic. 1129832" and purportedly notarized by Midlantic owner, Vivian E. Schusteritsch. The affidavit of service states "Midlantic Process, Inc.. P.O. Box 151, Wantagh, N.Y."

48. The affidavit of service alleges that Service was made by serving "John Doe", purportedly a tenant residing at Ms. Coble's New York address, 338 East 53rd, Apt. 2D, New York, NY 10022-5254.

49. The Affidavit of Service alleged that two prior attempts at service had been made on 8/2/05 and 8/3/05, respectively, and that the process server inquired with "John Doe" as to whether Ms. Coble was in the military and received a negative reply.

50. The Affidavit of Service alleged that "deponent deposited in a post office, official depository under the exclusive care and custody of the United States Postal Service within the State of New York a true copy(s) of the SUMMONS & COMPLAINT in the above entitled action, properly enclosed and sealed in a post-paid wrapper marked PERSONAL & CONFIDENTIAL, addressed to the said defendant" at the New York address listed above, via "Certificate of Mailing".

51. A default judgment for $10,670.52 was entered against Ms. Coble on December 07, 2005.

52. The default judgment contains a sworn statement by Mitchell Slamowitz of C&S, "that pursuant to the Affidavit(s) of Service, of the process server on the file herein, the defendant(s) were served, but have since failed to appear, answer or move herein, and the time to do so has expired so that Plaintiff is entitled to a judgment by default."

53. Ms. Coble became aware of the New York judgment for the first time in mid-2009. Specifically, she was contacted in January, 2009 by a Florida collection lawyer, Stanley B. Erskin, Esq., who was attempting to collect from Ms. Coble on the basis of a purported Florida state court judgment against her in an action supposedly titled "Discover Bank v. Coble".

54. As no such Florida judgment existed, Ms. Coble complained to the Florida Attorney General and the Florida Bar Association in early 2009.

55. In response to the Florida Bar Association inquiry, Mr. Erskine produced a copy of the judgment against Ms. Coble in New York Civil Court, in Discover Bank v. Coble (Index: 36085/05), claiming that a clerical error had led him to believe that the judgment was entered in Florida. This was the first time Ms. Coble learned of the judgment or that a case had been filed against her.

56. Ms. Coble, representing herself pro se, moved to vacate the judgment in <u>Discover Bank v. Coble</u> by Order to Show Cause on September 7, 2010 alleging that she had never been served.

57. C&S opposed the motion, filing an "Affirmation In Opposition To Order To Show Cause" sworn to by C&S associate attorney Crystal S.A. Scott, which stated:

> In Defendant's Order to Show Cause, Defendant alleges that she was never served with the Summons & Complaint that were filed in this action. Plaintiff submits that this statement is patently untrue. Plaintiff respectfully points out that, as set forth in the Affidavit of Service, Defendant was properly served in strict accordance with the directives of CPLR § 308(4). Moreover, the Affidavit of Service states that true copies of the Summons and Complaint were properly mailed to Defendant at Defendant's address.

58. By Order and Decision dated 10/5/10, New York Civil Court Judge, the Hon. Peter Moulton, ordered a "hearing on the issue of service and for final disposition of the motion."

59. Ms. Coble subsequently retained Schlanger & Schlanger, LLP as counsel in October, 2010. It was at this time that Ms. Coble first became aware of the existence of the Vega Affidavit and the unfair and deceptive acts complained of herein.

60. By letter dated October 25, 2010, counsel for Ms. Coble informed C&S that Ms. Coble had retained counsel; that Ms. Coble intended to fly in from Florida for the hearing ordered by the Court, and that the process server's attendance was required.

61. On November 3, 2010, the judgment was vacated and discontinued by stipulation of the parties.

**PLAINTIFFS' EXPERIENCES**
**(MILAGROS HARPER)**

62. On December 16, 2002, C&S, on behalf of Direct Merchants Credit Card Bank, filed a consumer collection lawsuit against named plaintiff Milagros Harper in New York Supreme Court, County of Westchester, titled <u>Direct Merchants Credit Card Bank v. Harper</u> (Index: 21529/02), alleging that Mrs. Harper owed Plaintiff $4,289.90 and $857.98 in attorneys fees, plus interest and costs.

63. On January 21, 2003, C&S or an agent acting on its behalf filed an affidavit of service in <u>Direct Merchants Credit Card Bank v. Harper</u> (Index: 21529/02), which was provided by Midlantic.

64. Specifically, the affidavit was purportedly sworn to and signed by "Kenneth Vega" and purportedly notarized by Vivian E. Schusteritsch. The affidavit of service states "Midlantic Process, Inc. P.O. Box 151, Wantagh, N.Y." Ms. Schusteritsch is one of the principals of Midlantic.

65. The affidavit of service alleges that Service was made by serving Mrs. Harper by "nail and mail" service at 824 Bronx River Road, Apt. 6A, Bronxville, New York.

66. The Affidavit of Service alleged that two prior attempts at service had been made on 12/20/02 and 12/23/02, respectively, and that the process server inquired with "tenant", "Sid Johnson" as to whether Mrs. Harper was in the military and received a negative reply.[2]

67. The Affidavit of Service alleged that "deponent deposited in a post office, official depository under the exclusive care and custody of the United States Postal Service within the State of New York a true copy(s) of the SUMMONS & COMPLAINT in the above entitled action, properly enclosed and sealed in a post-paid wrapper marked PERSONAL & CONFIDENTIAL, addressed to the said defendant" at the New York address listed above, via "Certificate of Mailing".

68. A default judgment for $5,050.31 was entered against Mrs. Harper on December 07, 2005. The default judgment contains a sworn statement by Mitchell Slamowitz of C&S, "that the Defendant(s) have failed to appear, answer or move herein, and the time to do so has expired" and that "pursuant to the affidavits of service on file herein, deponent alleged that defendant(s) are not in the military service".

69. Mrs. Harper first became aware of the existence of the Vega Affidavit and the unfair and deceptive acts complained of herein in August, 2010 upon meeting with counsel.

70. Mrs. Harper has been dunned by Defendants on the judgment during the year prior to the filing of the Complaint. For example, Defendants caused the Westchester County Sheriff's Civil Unit to send her a notice of income execution dated July 8, 2010.

---

[2] The Affidavit of Service contradicts itself inasmuch as it alleges that Mr. Vega was "unable, with due diligence to find Defendant or a person of suitable age and discretion" but also asserts that the process server spoke with a "Sid Johnson; Tenant" at said premise regarding whether or not Mrs. Harper was in the military.

71. The copy of the income execution prepared and filed by Defendants with the Sherriff and forwarded to Mrs. Harper, is dated June 11, 2010.  It commands Mrs. Harper to pay Defendants the amount of the judgment plus interest and costs in installments amounting to 10% of her gross wages (with payments to be made through the Sheriff's office) and notifies her that if she fails to commence payments within 20 days, the income execution will be served on her employer and the payment subtracted from her paycheck.  The income execution contains notices regarding certain rights of judgment debtors, and bears Defendant David Cohen's signature.

72. Based upon that income execution, Defendants collected and retained 10% of Ms. Harper's gross wages on several occasions.

## PLAINTIFF'S EXPERIENCES
## (DENNIS HARPER)

73. On February 20, 2002, C&S, on behalf of Discover Bank, filed a consumer collection lawsuit against named plaintiff Dennis Harper in New York Supreme Court, County of Westchester, titled <u>Discover Bank v. Harper</u> (Index:  02-02661), alleging that Mr. Harper owed Plaintiff $12473.87 and $2494.77 in attorney's fees, plus interest and costs.

74. On March 11, 2002, C&S or an agent acting on its behalf filed an affidavit of service in <u>Discover Bank v. Harper</u> (Index:  02-02661), which was provided by Midlantic.

75. Specifically, the affidavit was purportedly sworn to and signed by "Kenneth Vega" and purportedly notarized by Vivian E. Schusteritsch.  The affidavit of service states "Midlantic Process, Inc..  P.O. Box 151, Wantagh, N.Y."   Ms. Schusteritsch is one of the principals of Midlantic.

76. The affidavit of service alleges that Service was made by serving Mr. Harper by "nail and mail" service at 824 Bronx River Road, Apt. 6A, Bronxville, New York.

77. The Affidavit of Service alleged that two prior attempts at service had been made on 2/15/02 and 2/16/02, respectively, and that the process server inquired with "Ron Doe; Neighbor" as to whether Mr. Harper was in the military and received a negative reply.

78. The Affidavit of Service alleged that "On 2/28/02, deponent deposited in a post office, official depository under the exclusive care and custody of the United States Postal

Service within the State of New York a true copy(s) of the SUMMONS & VERIFIED COMPLAINT in the above entitled action, properly enclosed and sealed in a post-paid wrapper marked PERSONAL & CONFIDENTIAL at the aforementioned last known address. . ."

79. A default judgment for $12,891.37 was entered against Mr. Harper on October 21, 2002.

80. The default judgment contains a sworn statement by Mitchell Slamowitz of C&S, "that the Defendant(s) have failed to appear, answer or move herein, and the time to do so has expired" and that "pursuant to the affidavits of service on file herein, deponent alleged that defendant(s) are not in the military service"

81. Mr. Harper was not served with the Summons and Complaint in this case by affixation to his door followed by regular mail, nor by any other method.

82. Mr. Harper was not aware of this lawsuit until August 2010, when he learned that many New Yorkers were victims of false Midlantic affidavits filed by Defendants and, as a result, examined the online court files made available by the Westchester County Clerk to see if he, too, was a victim.

83. Mr. Harper first became aware of the existence of the Vega Affidavit and the unfair and deceptive acts complained of herein in August, 2010 upon meeting with counsel.

84. C&S has dunned Mr. Harper subsequent to the initial filing of this action. Specifically, and without limitation, C&S sent Mr. Harper a letter dated March 2, 2011 that referenced the Index number of the case in which the default judgment had been taken, listed the "Balance Due As Of  March 02, 2011" as "$22,599.11", and offered to accept a sum of $7,909.69 as full and final settlement.  The letter characterized this offer as a "savings of 65% off" and a "TAX SEASON SPECIAL DISCOUNT".

## CLASS ACTION ALLEGATIONS

85. Plaintiff brings this action on behalf of herself and all other similarly situated people. Plaintiffs seek to represent a Class defined as follows:

> All persons who have been sued in a consumer collection action commenced in New York State in which C&S represented the Plaintiff; and the affidavit of service was signed and/or notarized by Midlantic or any owner, agent or employee of Midlantic.

86. Excluded from the Class are all claims for personal injury, anyone employed by counsel for Plaintiff in this action, and any Judge to whom this case is assigned, as well as his or her immediate family and staff.

87. Excluded from the Class is Gloria Shepherd, Frank Caprino and Kristina Armstrong Boyle.

88. This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria of Federal Rule of Civil Procedure Rule 23.

89. <u>Numerosity</u>. Members of the Class are so numerous that their individual joinder herein is impracticable. Upon information and belief, C&S filed tens of thousands of Midlantic affidavits in case in which defaults were obtained. Indeed, according to Mr. Vega's affidavit he personally was responsible for the filing of tens of thousands of such affidavits. Mr. Vega was, of course, just one of Midlantic's process servers. Although the exact number of Class members and their addresses are unknown to Plaintiffs, they are readily ascertainable from Plaintiffs' records.

90. <u>Existence and predominance of common questions</u>. Common questions of law and fact exist as to Plaintiffs and all members of the Class and predominate over questions affecting only individual Class members. These common questions include:

(a)     Whether Defendants, by act or omission, falsely represented to the class and New York courts that the Midlantic affidavits were true and proper after it lacked a good faith basis for this assertion.

(b)     Whether Defendants are engaged in unfair and/or deceptive debt collection practices in violation of 15 USC 1692 et seq.

(c)      Whether Plaintiffs and the other Class members are entitled to statutory damages, costs and attorneys fees under the FDCPA.

(d)     Whether Plaintiffs and the other Class members are entitled to notice regarding the contents of the Vega Affidavit under the FDCPA.

91. <u>Typicality</u>. Plaintiffs' claims are typical of the claims of the Class because, among other things, Plaintiffs were sued in a consumer collection action in New York State in which (1) C&S represented the Plaintiff; (2) the affidavit of service was signed and/or

notarized by an employee, owner or agent of Midlantic; and (3) C&S did not notify Plaintiffs or the Courts in which the consumer collection actions against Plaintiffs herein were filed of the fact that it no longer had a good faith basis to belief in the accuracy and propriety of the Affidavit of Service it had filed or the sworn statements of Defendants regarding same.

92. <u>Adequacy</u>. Plaintiffs are an adequate representative of the Class because their interests do not conflict with the interests of the members of the Class they seek to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiffs intend to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

93. <u>Superiority</u>. The class action is superior to other available means for the fair and efficient adjudication of the claims of Plaintiffs. The damages suffered by each individual Class member may be limited. Damages of such magnitude are small given the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. Further, it would be virtually impossible for the members of the Class effectively to individually redress the wrongs done to them. Even if the members of the Class themselves could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties and the court system presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

94. In the alternative, the Class may be certified because:

> (a)   the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Class members which would establish incompatible standards of conduct for Defendants;
>
> (b)   the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them which would,

    as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

    (c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

## TOLLING

95. <u>Fraudulent Concealment Tolling</u>: The FDCPA's one year statute of limitations, which might otherwise apply to bar Plaintiffs' claims should be tolled by Defendants' knowing and active concealment of the fact that the Midlantic Affidavits and the attorney affirmations referencing the Midlantic Affidavits were false and improper. Plaintiffs could not have discovered, even upon reasonable exercise of diligence, that the Midlantic Affidavits and related attorney affirmations were false and improper. Indeed, in those instances where a consumer, acting pro se, raised lack of service as a defense, Defendants affirmatively re-asserted the validity of the Midlantic Affidavits it knew to be false in sworn affirmations. Defendants kept Plaintiffs ignorant of vital information essential to the pursuit of their claims.

 <u>Estoppel</u>: Defendants knowingly, affirmatively and actively concealed the falsity and impropriety of the Midlantic Affidavits and related attorney affirmations from consumers. Defendants did not inform the Courts or consumers after November 2006 (when Defendants learned of the Vega Affidavit) that Defendants did not have any reasonable basis to believe the Midlantic Affidavits and related attorney affirmations were true and, to the contrary, had every reason to believe they were false. In those instances where a consumer, acting pro se, raised lack of service as a defense, Defendants affirmatively re-asserted the validity of the Midlantic Affidavits it knew to be false in sworn affirmations. In this way, Defendants intentionally kept Plaintiffs ignorant of vital information essential to the pursuit of their claims. Based upon the foregoing, Defendants are estopped from relying on any statutes of limitations in defense of this action.

## CAUSE OF ACTION
### (FDCPA, 15 U.S.C. § 1692 *et seq.*)

96. Plaintiffs hereby restate, reallege, and incorporate by reference all foregoing paragraphs.

97. Congress enacted the Fair Debt Collection Practices Act to stop "the use of abusive, deceptive and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a).

98. A debt collector may not "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Such a prohibition includes the false representation of "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2)(A). Such a prohibition also includes the "use of any false representation or deceptive means to collect or attempt to collect any debt." 15 U.S.C. §1692e(1 0).

99. A debt collector may not "use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f.

100. Nor may a debt collector "engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." U.S.C. § 1692d.

101. Defendants violated the FDCPA, including without limitation, §§ 1692d, 1692e, 1692e(2)(A), 1692e(10), and 1692(f) by representing to consumers and the courts through act and/or omission that the Midlantic Affidavits and related attorney affirmations were accurate, true and proper (and/or that Defendants had a good faith belief in their accuracy, propriety and truthfulness) after November 2006, when Defendants no longer had or could plausibly maintain such a belief.

102. Defendants violated the FDCPA, including without limitation, §§ 1692d, 1692e, 1692e(2)(A), 1692e(10), and 1692(f), by continuing to collect the debts at issue after November 2006, without informing or attempting to inform consumers that the

  Midlantic Affidavits and related attorney affirmations were false, and/or that Defendants no longer had a reasonable, good faith belief in their accuracy, propriety and truthfulness.

103. As a direct and proximate result of Defendants' violations of the FDCPA, Plaintiffs have sustained statutory damages, actual damages, costs and attorneys' fees.

  WHEREFORE, Plaintiffs and members of the class request the following relief jointly and severally as against all defendants:

  A. An order certifying this case as a class action under Fed. R. Civ. P. 23;
  B. A judgment declaring that Defendants have committed the violations of law alleged in this action;
  C. An order directing Defendants to cease engaging in debt collection practices that violate the FDCPA;
  D. An order directing Defendants to provide each class member against whom a case is currently pending or against whom a default judgment was taken with a copy of the affidavit of service filed in their action and a copy of the Vega Affidavit, and a letter explaining that this information may or may not provide a defense or grounds for vacatur and dismissal in the action against them.
  E. Statutory and actual damages pursuant to the FDCPA;
  F. An order awarding disbursements, costs, and attorneys' fees pursuant to the FDCPA
  G. Such other and further relief that may be just and proper.

*[rest of page intentionally left blank]*

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all claims so triable.

Dated: December 9, 2011

Respectfully Submitted,

Daniel A. Schlanger, Esq. (ds-9330)
Schlanger & Schlanger, LLP
1025 Westchester Ave., Suite 108
White Plains, NY 10604
Ph: 914-946-1981
Fax: 914-946-2930
daniel@schlangerlegal.com

Gary Klein, Esq.
(admitted pro hac vice)
Roddy Klein & Ryan
727 Atlantic Ave., 2d Floor
Boston, MA 02111
Tel. 617- 357-5500
Email: klein@roddykleinryan.com

Counsel for Plaintiffs